UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Stacey Lee Milch, | Case No. 23-cv-838 (NEB/LIB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden Michael Segal, | |
| Respondent. | |

This matter comes before the undersigned United States Magistrate Judge, pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts,[1] upon Petitioner Stacey Lee Milch's Petition for Writ of Habeas Corpus ("Petition"). [Docket No. 1].

Through the present action, Petitioner seeks a writ of habeas corpus directing the Federal Bureau of Prisons (BOP) to properly apply her First Step Act (FSA) time credits to her sentence. (Pet. [Docket No. 1]). For the reasons discussed herein, this Court recommends that the Petition be denied for failure to state a cognizable habeas claim.

On June 11, 2021, Milch pleaded guilty in the United States District Court for the District of Montana to aiding and abetting wire fraud in violation of 18 U.S.C. §§ 2 & 1343 and aiding and abetting aggravated identity theft in violation of 18 U.S.C. §§ 2 & 1028. See United States v. Milch, No. 1:21-cr-00023-SPW [Docket No. 24] (D. Mont. Nov. 18, 2021). She was sentenced to a total term of imprisonment of 60 months to run concurrent with any sentences imposed in her state court cases, to be followed by a total 3-year term of supervised release. (Id. at [Docket No.

---

[1] Although the Petition is not brought under 28 U.S.C. § 2254, the Rules Governing Section 2254 Cases may nevertheless be applied to the Petition. See Rule 1(b).

49]). She is currently serving her term of imprisonment at the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca").

In her present habeas Petition, Milch makes two claims concerning the BOP's application of her FSA time credits. First, she contends that the law requires the BOP to apply earned FSA credits towards a prisoner's release date regardless of the prisoner's recidivism risk level. (Pet. [Docket No. 1] at 2). Second, Milch claims that she should receive FSA credits for each evidence-based recidivism reducing educational class or program or productive activity she has completed (or is in the process of completing). (See Pet. [Docket No. 1]; Exhibit [Docket No. 1-2] at 1).

Both claims concern the BOP's application of the First Step Act of 2018 (FSA), which creates incentives for federal prisoners to participate in and complete "evidence-based recidivism reduction programs" and "productive activities" recommended by the prisoner's individualized risk and needs assessment. See 18 U.S.C. § 3632 et seq. One such incentive—and the incentive at issue here—allows eligible prisoners to earn FSA time credits towards their sentence for their "successful participation" in such activities. 18 U.S.C. § 3632(d)(4). Milch challenges how the BOP calculates FSA time credits and which prisoners are eligible for those credits to be applied to their supervised release and pre-release custody dates. (Pet. [Docket No. 1]).

Pursuant to 18 U.S.C. § 3632(d)(4)(C), FSA credits are applied towards a prisoner's supervised release or pre-release custody dates in accordance with 18 U.S.C. § 3624(g). Section 3624(g), in turn, further defines which prisoners are eligible for their FSA credits to be applied towards their pre-release and supervised release dates. Pursuant to 18 U.S.C. § 3624(g)(1)(D)(ii), for FSA credits to be applied to the prisoner's supervised release date, the prisoner must have been determined to be "a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." Thus, read together, although all eligible prisoners may earn FSA credits, see 18 U.S.C.

§ 3632(d)(4)(A), only those whose risk recidivism levels are "minimum" or "low" are eligible for those FSA credits to be applied to their supervised release date.

As she acknowledges in her Petition, Milch's risk recidivism level is medium. (Pet. [Docket No. 1] at 3).[2] In accordance with 18 U.S.C. § 3624(g)(1)(D)(ii), therefore, she is flatly ineligible to have FSA credits applied towards her supervised release date. Thus, to the extent that Milch claims that the BOP erred in failing to apply her FSA credits against her supervised release date, such a claim fails as a matter of law.[3]

As observed above, time credits may also be applied towards a prisoner's pre-release custody date.[4] To be eligible, however, the prisoner's recidivism risk level must either be "minimum or low" pursuant to the last two reassessments of the prisoner <u>or</u> the prisoner "has had a petition to be transferred to pre-release custody or supervised release approved by the warden of the prison . . . ." 28 U.S.C. § 3624(g)(1)(D)(i)(I)-(II).

Liberally construing her filings in her favor, Petitioner also argues that her time credits should be applied toward her pre-release custody date so that she may be transferred to home confinement or a residential reentry center ("RRC") at an earlier date. Petitioner may not, however, seek such relief in this habeas Petition.

Pre-release custody means placement in either home confinement or an RRC. 18 U.S.C. § 3624(g)(2)(A)-(B). A habeas petitioner, however, may challenge only the fact or duration

---

[2] Milch does not appear to contest her risk recidivism level. Her claim, rather, is that her level is irrelevant for the purposes of applying her earned FSA credits towards her release date. (Pet. [Docket No. 1] at 3). Pursuant to 28 U.S.C. § 3624(g)(1)(D), however, a prisoner's recidivism risk level clearly <u>does</u> matter. Accordingly, Milch's argument fails as a matter of law.

[3] The law here is clear. Thus, there is no basis for the Court to engage in any <u>Chevron</u>-like analysis of the BOP's program statement concerning its interpretation of the law. <u>See</u> <u>Ortega-Marroquin v. Holder,</u> 640 F.3d 814, 818 (8th Cir. 2011) (explaining that "the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress") (quoting <u>Chevron U.S.A. v. Natural Resources Defense Council,</u> 467 U.S. 837, 842–43 (1984)).

[4] Here, prerelease custody date refers to the date a prisoner is eligible for transfer to a form of custody intended for prisoners who will be released from confinement in the near future.

3

of her confinement. Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014); Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). Federal courts consider claims related to a prisoner's placement in home confinement or at an RRC as claims concerning the place of the prisoner's confinement. See United States v. Houck, 2 F.4th 1082, 1085 (8th Cir. 2021) (discussing home confinement as a place of confinement); Williams v. Birkholz, Case No. 20-cv-2190 (ECT/LIB), 2021 WL 4155614, at *6 (D. Minn. July 20, 2021) ("A prisoner is transferred to home confinement not released to home confinement because home confinement is a place of incarceration."), report and recommendation adopted, 2021 WL 4155013 (D. Minn. Sept. 13, 2021).

To the extent that Milch contends that her earned FSA credits should be applied towards her pre-release custody date, such claims do not attack the legality of her detention, only the place of that detention. A writ of habeas corpus is therefore not available as a remedy to address such a claim. See, e.g., Jorgensen v. Birkholz, No. 20-cv-2349 (NEB/DTS), 2021 2935641, at *1 (D. Minn. July 13, 2021).[5]

In sum, the law expressly states that Milch—whose risk of recidivism is "medium"—is not eligible to have her FSA credits applied to her supervised release date. Moreover, any claim related to her placement in pre-release custody under 18 U.S.C. § 3624(g)(1)(D)(i), moreover, is not cognizable as a habeas claim.

This leaves Milch's claim that she should earn FSA credits for each evidence-based recidivism reducing (EBRR) program or productive activity (PA) that she completes (or is in the process of completing). (See Pet. [Docket No. 1]; Exhibit [Docket No. 1-2] at 1). For the reasons set forth below, this claim fails.

---

[5] It is worth noting, moreover, that "it is [] well established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement." United States v. James, 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020).

According to the FSA, eligible prisoners earn "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). A prisoner with a risk recidivism level of "minimum or low" may also be eligible to "earn an additional 5 days of time credits for every 30 days of successful participation" in such programming. 18 U.S.C. § 3632(d)(4)(A)(ii).

Petitioner alleges she has taken multiple evidence-based recidivism reduction programs (or classes) while incarcerated, many of those programs were taken simultaneously, and she believes she has not been provided with proper credit for each of these programs in a manner she believes is consistent with § 3632(d)(4)(A). (See Petition [Docket No. 1]; Exhibit [Docket No. 1-2]). Under the Petitioner's interpretation of § 3632(d)(4)(A), the FSA entitles her to 10 days of earned time credit per program or class for each thirty-day period that she is enrolled in each program or class. Put differently, Petitioner believes if she participates in a single qualifying program or class for a particular thirty-day period, she is entitled to 10 days of credit, and she is entitled to an additional 10 days of credit for each additional qualifying program or class in which she participates during the same thirty-day period. Thus, under Petitioner's interpretation, if she participated in 10 different, qualifying programs or classes during a single thirty-day period, she would be entitled to 100 days of earned time credit for her participation during that single thirty-day period.

The BOP interpretation of the FSA varies from that of Petitioner.

The regulation promulgated by the BOP entitles prisoners to 10 days of time credit for each thirty-day period that the prisoner is enrolled in programming, regardless of how many individual programs or classes the prisoner might be enrolled in at any given time. See 28 C.F.R. § 523.42(c)(1) ("For every thirty-day period that an eligible inmate successfully participates in

5

EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits.").

Petitioner now asks that the Court find that the BOP has misinterpreted the FSA.

Petitioner is one of a great many prisoners to recently offer this challenge to the BOP's interpretation of the FSA. Her interpretation of the FSA has universally been rejected, including repeatedly here in this District. See Garcia v. Segal, 23-cv-883 (JRT/LIB), Docket No. 5 (D. Minn. May 12, 2023); Rice v. Segal, No. 23-cv-0751 (ECT/DJF), Docket No. 6 (D. Minn. Apr. 24, 2023); Sisson v. Segal, No. 23-cv-548 (NEB/JFD), Docket No. 5 (D. Minn. Apr. 14, 2023); Bray v. Yates, No. 2:22-cv-142 (JTR), 2023 WL 2894918, at *6 (E.D. Ark. Apr. 11, 2023); Dale v. Hawkins, No. H-22-3224, 2023 WL 2601215, at *5 (S.D. Tex. Mar. 22, 2023); Burruss v. Hawkins, No. H-22-2740, 2023 WL 319955, at *6 (S.D. Tex. Jan. 19, 2023). This Court agrees with the analysis found in the cases upholding the BOP's interpretation of the FSA here.

Section 3632(d)(4)(A) does not require that the BOP award credits for each program or class completed. Instead, prisoners "shall earn . . . time credits for every 30 days of successful participation in evidence-based recidivism reduction programming." 18 U.S.C. § 3632(d)(4)(A)(i) (emphasis added). A prisoner who participates in one program or many programs simultaneously is equally "participati[ng] in evidence-based recidivism reduction programming," Id., and is equally eligible to receive the same amount of time credits. "Congress made clear that a prisoner earns First Step Act Time Credits based on the number of days in which they participate in eligible programs, not the number of eligible programs in which they participate." Dale, 2023 WL 2601215, at *5.

This Court does not believe the language of § 3632(d)(4)(A) to be ambiguous in this regard, but even if the language were ambiguous, Petitioner would not be entitled to habeas relief unless

6

the regulatory implementation of § 3632(d)(4)(A) by the BOP were an <u>unreasonable</u> interpretation of the statute. "The agency's view 'governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts.'" <u>Ameren Corp. v. FCC</u>, 865 F.3d 1009, 1012 (8th Cir. 2017) (quoting <u>Entergy Corp. v. Riverkeeper, Inc.</u>, 556 U.S. 208, 218 (2009)). The BOP has interpreted § 3632(d)(4)(A) consistent with what this Court concludes is required by the plain language of the FSA—prisoners are awarded FSA credits based on the number of days spent in programming, not based on the number of programs or classes attended. <u>See</u> 28 C.F.R. § 523.42(c)(1). Regardless of whether this interpretation is required by the text of § 3632(d)(4)(A), "the BOP's interpretation of the FSA credit-accrual formula is clearly reasonable." <u>Bray</u>, 2023 WL 2894918, at *6.

This Court thus concludes that Petitioner is not entitled to habeas corpus relief and recommends that her habeas petition be denied.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS RECOMMENDED THAT**:

1. Petitioner Stacey Lee Milch's Petition for habeas corpus relief under 28 U.S.C. § 2241, [Docket No. 1], be **DENIED**; and

2. This matter be **DISMISSED without prejudice**.

Dated: June 14, 2023                                s/Leo I. Brisbois
                                                    Hon. Leo I. Brisbois
                                                    United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).